IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Brian J. Dorsey, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00198 |
| | ) | |
| Trevor Foley, et al., | ) | *This is a capital case;* |
| | ) |     *execution set for April 9, 2024.* |
|     Defendants. | ) | |

**Plaintiff Brian Dorsey's Motion for a Temporary Restraining Order and Preliminary Injunction**

---

Plaintiff Brian Dorsey submits this motion, along with his Complaint, pursuant to Federal Rule of Civil Procedure 65(a) and (b), for a temporary restraining order ("TRO"), a preliminary injunction and a stay of execution. Dorsey seeks injunctive relief barring Defendants and each of them and/or their agents, from acting jointly or severally to execute him on April 9, 2024, by means that will deprive him of his rights in violation of the Religious Land Use and Institutionalized Person Act, 42 U.S.C. § 2000cc et seq, and the First, Fifth, Sixth, Eighth, and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

In light of the scheduled execution date, a temporary restraining order and a preliminary injunction are necessary to allow Dorsey to litigate his claims before he is unconstitutionally executed. Dorsey requests answers to attached interrogatories, expedited discovery, and an evidentiary hearing as the Court deems necessary on his

motion. The reasons supporting this request are explained in the attached memorandum in support.

Respectfully submitted this 9th day of February, 2024.

*s/ Arin Melissa Brenner*

**Arin Melissa Brenner #4990974 (NY)**
Ray Kim #319070 (PA)
Assistant Federal Public Defenders
Office of the Federal Public
Defender for Western District of
Pennsylvania, Capital Habeas Unit
1001 Liberty Avenue, Ste 1500
Pittsburgh PA 15222
(412) 644-6565
Email: Arin_Brenner@fd.org
            Ray_Kim@fd.org

*Counsel for Plaintiff*

## Memorandum in Support

### I. Introduction

This request for a temporary restraining order and preliminary injunction staying Plaintiff's execution should be granted, pending full consideration of his claims on a complete record. Dorsey has a substantial likelihood of prevailing on the merits of his claims; there is a threat of irreparable harm to him; an injunction will not cause substantial harm to others; and the public interest lies in favor of not subjecting Dorsey to an unconstitutional execution, and in ensuring that Defendants are required to abide by the federal Constitution in carrying out criminal sentences. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Further, Dorsey's requested uses of pre-medications and adequate safeguards for court and counsel access listed in the complaint are narrowly-tailored solutions that do not interfere with state interests while protecting his own. *See e.g.*, 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief [in a prison conditions suit] must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.")

Because it would be possible to accommodate Dorsey's sincere religious beliefs under the Religious Land Use and Institutionalized Persons Act, as well as his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights without indefinitely delaying execution, the balance of equities and the public interest favor granting this preliminary injunction.

## II. Procedural Background

On December 13, 2023, the Supreme Court of Missouri set Plaintiff Dorsey's execution date for April 9, 2024. Dorsey's counsel reached out to MDOC's general counsel raising concerns about the lethal injection protocols and requested additional information. *See* Exhibit 3 to the Complaint. Counsel then received an email from the Attorney General's office, directing all communications regarding MDOC and lethal injection to go through them, and stated they would be responding to the queries. As of filing, no response has been received. *See* Exhibit 4 to the Complaint.

In his Complaint, Dorsey brings four claims against the Missouri Department of Corrections for the policy established under their execution protocol, adopted October 18, 2013, as well as practices not described nor proscribed by the protocol:

1. Dorsey's religious free exercise rights to engage in sincerely held religious beliefs, as protected by the First Amendment, would be substantially burdened by the painful practices used to establish IV lines;

2. The substantial burden to Dorsey's ability to engage in his sincerely held faith practices would also violate the Religious Land Use and Institutionalized Persons Act, and the state practices do not further legitimate state interests;

3. Dorsey would be denied his First, Fifth, Sixth, and Fourteenth Amendment rights of access to both counsel and the courts without a phone or call system in the event of an emergency or failure in the execution protocol;

4. Dorsey would be denied his Eighth Amendment rights to be free from cruel and unusual punishment without the use of a pre-medication such as fentanyl, or lidocaine and propofol, before the use of pentobarbital; without pre-medication, Dorsey would suffer a torturous death by flash pulmonary edema.

2

### III. This Court Should Grant Dorsey a Temporary Restraining Order and a Preliminary Injunction.

Petitioner Dorsey incorporates by specific reference all facts, allegations, and arguments made in his Complaint.

The Supreme Court has stated that in order to prevail on a preliminary injunction, a plaintiff challenging an execution policy or practices must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ramirez v Collier*, 595 U.S. 411, 421 (2022) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

**CLAIMS ONE AND TWO**

As laid out in the Complaint, Dorsey has a sincere religious belief that the moments with his spiritual advisor before his execution are crucial to the disposition of his soul in the afterlife, as he must pray and recommit his soul to God. *See, e.g.*, James 5:13-15 ("Are any among you suffering? They should pray. [ ] Are any among you sick? They should call for the elders of the church and have them pray over them, anointing them with oil in the name of the Lord. The prayer of faith will save the sick, and the Lord will raise them up, and anyone who has committed sins will be forgiven."); 2 Timothy 1:6 ("[I] remind you to rekindle the gift of God that is within you through the laying on of my hands") (New Revised Standard Version).

Further, not only are these Dorsey's sincere religious beliefs, these are beliefs

3

that are deeply rooted in our nation's history and tradition. See *Ramirez,* 595 U.S. at 427-28 (Supreme Court recounting the "rich history of clerical prayer at the time of a prisoner's execution, dating back well before the founding of our Nation.") To inhibit Dorsey's ability to prepare his soul for an afterlife in heaven and receive God's grace in the moments before death substantially burdens Dorsey's free exercise of religion.

Dorsey meets the high bar for a preliminary injunction. He is likely to prevail on the merits of his first two claims, if not under the First Amendment, then under the Religious Land Use and Institutionalized Person Act (RLUIPA), codified at 42 U.S.C. § 2000cc et seq, as Congress passed RLUIPA to protect prisoners who "have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez*, 595 U.S. at 433. Dorsey meets the initial burden of proving that the prison practice here substantially burdens his sincere religious beliefs. Inflicting a surgical procedure with absolutely no pain management denies Dorsey any composed, focused moments with his spiritual advisor at the moment it is most important he commit himself to God. *See e.g., Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015); *see also* Exhibit 5 to the Complaint, Report from Dr. Gail A. Van Norman, M.D., at 6, 23.

Because Dorsey has made such a showing, the State of Missouri must "demonstrate[ ] that imposition of the burden on that person" is the least restrictive means of furthering a compelling governmental interest. § 2000cc–1(a); see also *Holt*, 574 U.S. at 362. There is no such interest here. Moreover, the solution is narrowly tailored and readily available; the prison need only utilize a cheap and readily

4

available painkiller if those who set the IV lines lack the necessary training and experience to properly insert them without resorting to surgery. *See* Exhibit 6 to the Complaint, Report from Dr. Craig Stevens at 9-10. Finally, the use of a painkiller arguably better ensures the state could maintain the "solemnity and decorum in the execution chamber," which the Supreme Court has identified as a compelling governmental interest. *Ramirez*, 595 U.S. at 430. Therefore, a preliminary injunction must be granted.

**CLAIM THREE**

Dorsey's request for a phone to exercise his rights of access to counsel and the courts under the First, Fifth, Sixth, and Fourteenth Amendments is likely to prevail, given the number of sister courts and state protocols that have determined availability of a phone to exercise these rights in the event of an emergency during lethal injection is both constitutionally compelled and does not impede the states' interests in any way. Dorsey has a constitutional right to have meaningful access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 347 (1996); *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (inmate access must be "adequate, effective, and meaningful"). The right of access to the courts is intertwined with Dorsey's right of access to counsel, as well as the Eighth Amendment right asserted at Claim Four, because Dorsey can only assert his Eighth Amendment rights in court through counsel. *See Coe v. Bell*, 89 F. Supp. 2d 962, 966 (M.D. Tenn. 2000) ("Plaintiff's right to meaningful access to the courts to assert [his Eighth Amendment] right requires that counsel [*inter alia*] have access to a telephone"), *vacated as moot by*, *Coe v. Bell*, 230 F.3d 1357 (6th Cir. 2000)

5

(table). *See also McGehee v. Hutchinson*, Case No. 4:17-cv-00179-KGB, Docket No. 54 at *87 (E.D. Ark. Apr.15, 2017) (considering "right to counsel and access to the courts claims together" in granting plaintiff preliminary injunction enjoining Arkansas from implementing viewing policies infringing those rights), *overruled on other grounds by McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017).

Further, Dorsey's request is narrowly tailored, and it is in both Dorsey and the State's interest to have safeguards in place that protect the integrity, transparency, and accountability of the most lethal of State actions. All the State needs to do is make a phone available to counsel in the execution witness room that connects to another member of Dorsey's legal team in another area of the prison OR outside the witness room who can then call out to, or remain on a call with, a judge and the Attorney General of Missouri for the duration of the execution. *See In re: Ohio Execution Protocol Litig.* (*Henness*), Case No. 2:11-cv-1016, Docket No. 2134 (S.D. Ohio Jan. 15, 2019) (court order directing that judge, court reporter, and counsel for parties be present on telephone conference line during execution until notice of completed execution or reprieve by Governor); *see also* Exhibit 7 to the Complaint, Report from Mr. Allen L. Bohnert, Assistant Federal Public Defender, at 4-6; *see also* Arizona Department of Corrections Rehabilitation and Reentry, Execution Procedures § 13.5.1.3 ("While the attorney witness is in the witness room, a member of the Witness Escort Team shall hold one mobile phone designated by the attorney, to be made available to the attorney in exigent circumstances."), *available at* https://t.ly/wyHKF.

6

Finally, the prison could implement such a system without further delaying the execution, while protecting Dorsey from irreparable harm at the time that a person may need access to counsel most. The balance is in Dorsey's favor, and thus a preliminary injunction is appropriate. *See Coe*, 89 F. Supp. 2d at 966 ("The state certainly has no legitimate interest in depriving the Plaintiff of access to the courts to assert a claim of cruel and unusual treatment."). *See also Beard v. Banks*, 548 U.S. 521, 522 (2006) ("restrictive prison regulations are permissible if they are 'reasonably related to legitimate penological interests'") (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

**CLAIM FOUR**

As laid out in the complaint, there are insufficient safeguards for the IV-line placement and delivery of pentobarbital, a drug that causes the severe suffering of flash pulmonary edema in "virtually all" executions using single-drug barbiturates. *See* Van Norman Report at 19. Further, those subject to such a protocol are likely conscious, as "a single dose of pentobarbital is insufficient to ablate awareness, including the sensations of pain and the extreme suffering of suffocation and asphyxiation that will occur." *Id*.

The Circuit Court of Appeals for the District of Columbia, after extensive discovery and evidentiary hearings, determined that plaintiffs had sufficiently pled that a single drug lethal injection protocol using pentobarbital caused flash pulmonary edema and was sufficiently torturous to violate the Eighth Amendment proscription against cruel and unusual punishment. *See In re Federal Bureau of*

7

*Prisons Execution Protocol Cases*, 980 F.3d 123, 133 (D.C. Cir. 2020) (holding that "[b]y pleading that the federal government's execution protocol involves a "virtual medical certainty" of severe and torturous pain that is unnecessary to the death process and could readily be avoided by administering a widely available analgesic first, the Plaintiffs' complaint properly and plausibly states an Eighth Amendment claim."). Dorsey is likely to prevail in this Court, as the evidence for flash pulmonary edema has only increased since that Circuit Court ruled on the merits. *Compare In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, 1:19-mc-00145, ECF 24 (Nov. 11, 2019) with Van Norman Report at Exhibit 5 to Complaint.

Further, Plaintiff has offered multiple "feasible and readily implemented alternative method of execution[s] that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125(2019).

Dorsey requests not an indeterminate stay, but premedication doses of cheap, easy to acquire drugs—an analgesic drug, such as fentanyl or morphine, or a general anesthetic, such as a combination of lidocaine and propofol or etomidate—in order to prevent such grievous suffering. He will suffer the irreparable harm of a torturous death without the use of a pain-relieving premedication, whereas the State will not be burdened by providing it. Arguably, the use of premedication is in both the State's and the public interest, as it respects constitutional rights and bolsters the integrity of the execution process while not delaying or denying punishment.

**IV.   Conclusion**

Because Dorsey has a substantial likelihood of prevailing on the merits of his claims, he is facing irreparable harm, and his narrowly-tailored requests do not interfere with state interest nor delay execution indefinitely, the balance of equities tips in his favor and this Court must grant a preliminary injunction. Plaintiff requests the Court order Defendants to answer the attached interrogatories in order to facilitate discussions between parties, as well as winnow the facts at issue in an hearing.

**CERTIFICATE OF ELECTRONIC SERVICE**

     I, Arin Melissa Brenner, do hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, using the electronic case filing system of the Court on February 9, 2024. I have also served Defendants' counsel of record, Mr. Gregory Goodwin, of the Office of the Attorney General, State of Missouri via e-mail at Gregory.Goodwin@ago.mo.gov.

                                *s/ Arin Melissa Brenner*
                                **Arin Melissa Brenner #4990974 (NY)**
                                Office of the Federal Public
                                Defender for Western District of
                                Pennsylvania Capital Habeas Unit
                                1001 Liberty Avenue, Ste 1500
                                Pittsburgh PA 15222
                                (412) 644-6565
                                Email: Arin_Brenner@fd.org