UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN J. DORSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-00198-HEA |
| | ) | |
| TREVOR FOLEY, MYLES STRID, and RICHARD ADAMS, | ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court upon a "Motion to Dismiss for Failure to Exhaust Administrative Remedies" (ECF No. 12), filed by Defendants Trevor Foley, Myles Strid, and Richard Adams (collectively "Defendants"). Plaintiff has responded to the motion and Defendants have replied, and the matter is now ripe for disposition.

For the reasons explained below, the Court grants the motion, and dismisses this action without prejudice. The Court also denies as moot "Plaintiff Brian Dorsey's Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 2), and Defendants' later-filed "Motion to Dismiss and Suggestions in Support." (ECF No. 18).

**Background**

Plaintiff is a Missouri State prisoner. As of the date of this Order, he is scheduled to be executed on April 9, 2024 at the Eastern Reception, Diagnostic and Correctional Center (ERDCC), pursuant to the Missouri Supreme Court's December 13, 2023 Warrant of Execution. *See* (ECF No. 1-1).[1] He is represented by counsel in this matter, and he has fully paid the required filing fee.

---

[1,2] The Court considers this exhibit and the other exhibits to the Complaint part of the Complaint for all purposes. Fed. R. Civ. P. 10(c).

Plaintiff instituted this action on February 9, 2024 by filing a Complaint pursuant to 42 U.S.C. § 1983 against the following three Missouri Department of Corrections (MDOC) officials: Trevor Foley (Acting Director); Myles Strid (Acting Director of Adult Institutions); and Richard Adams (the ERDCC Warden).  Plaintiff sues the Defendants in their official capacities.

Plaintiff's claims concern the MDOC's execution protocol.  He writes:

> Plaintiff brings this action under 42 U.S.C. § 1983 for violations and threatened violations of his rights: to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; to exercise his right to religious freedom and exercise under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000 et seq.; and to free speech guaranteed by the First Amendment to the United States Constitution; to unhindered access to counsel and the courts and to petition the government for redress of grievances during the execution process under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(ECF No. 1 at 3).

In describing the manner in which he presented some of his claims to MDOC officials prior to the date he filed this action, Plaintiff states he sent a letter dated January 26, 2024 and addressed to the MDOC's Chief Counsel.  Plaintiff attached a copy of the letter as an exhibit to the Complaint.  (ECF No. 1-3 at 2-5).[2]  More specifically, Plaintiff writes:

> 4. On January 26, 2024, Dorsey's legal team mailed and emailed general counsel for the Missouri Department of Corrections ("MDOC"), who promptly responded that the letter had been received. See Exhibit 3. The legal team then received an email from Gregory Goodwin of the Attorney General's office on January 31, 2024. Mr. Goodwin confirmed he had now received those communications and requested any further questions or concerns regarding MDOC or the lethal injection protocol to be sent to him exclusively, through email. See Exhibit 4.
>
> 5. In this communication, Plaintiff requested: 1. His legal team to have access to a phone in the execution witness room, in order to effect meaningful access to counsel and the courts; 2. The use of appropriate, topical pain relief during the setting up of the IV lines, in order to allow for meaningful dialogue, prayers, and last rites with his spiritual advisor, a long-held and practiced tradition in both this

2

>country and in the Christian belief system Plaintiff Dorsey adheres to; and 3. The use of 500mcg of fentanyl before the injection of pentobarbital, as per the MDOC execution protocol, to prevent the cruel and unusual pain and anguish created by flash pulmonary edema. See Exhibit 3.
>
>6. There has been no response from the Attorney General to these questions as of the date of filing.

*Id.* at 2.  Plaintiff admits he filed this action before receiving a response addressing the claims in the letter.

>In his Prayer for Relief, Plaintiff writes:
>
>WHEREFORE, Plaintiff Brian Dorsey prays that this Court provide relief as follows:
>
>1. Granting expedited discovery, including ordering the State of Missouri to respond to Plaintiff Dorsey's interrogatories as attached to the Motion for a Preliminary Injunction;
>
>2. A preliminary injunction prohibiting Defendants from executing Plaintiff Dorsey until they can do so in a way that does not violate his rights;
>
>3. A declaratory judgment that MDOC's policy and practice violates Plaintiff Dorsey's First Amendment rights under the Free Exercise Clause;
>
>4. A declaratory judgment that MDOC's policy and practice violates Plaintiff Dorsey's rights under RLUIPA;
>
>5. A declaratory judgment that MDOC's policy and practice violate Plaintiff Dorsey's right to counsel and right of access to the courts under the First, Fifth, Sixth, and Fourteenth Amendments; and
>
>6. A declaratory judgment that MDOC's policy and practice violate Plaintiff Dorsey's Eighth Amendment rights to be free from cruel and unusual punishment.

*Id.* at 31-32 (emphasis in original).

In the instant motion, Defendants move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants contend that the Prison Litigation Reform Act of 1996 (PLRA) applies to Plaintiff's claims, and dismissal is mandatory under 42 U.S.C. § 1997e(a) because Plaintiff failed to exhaust available administrative remedies before filing this

3

action.  In support, Defendants argue that Plaintiff's Complaint establishes that he failed to present his claims in accordance with the MDOC's applicable procedural rules, which they describe as follows:

> First, the inmate files an Informal Resolution Request ("IRR"). If dissatisfied with the IRR response, he "must" file a grievance within seven days of receiving the response. If dissatisfied with the grievance response, he "must" submit a Grievance Appeal form to the grievance officer within seven days. Failure to timely file a grievance or submit a grievance appeal "will result" in the complaint or the appeal "being considered abandoned." After receiving the grievance appeal response, the inmate "has exhausted the grievance process."

(ECF No. 12 at 4) (citing *Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012)).

Defendants add that because Plaintiff's claims relate to the MDOC's execution protocol, he would have been able to proceed directly to the grievance appeal stage.  Defendants further state that after it became clear that Plaintiff wished to pursue litigation, MDOC officials began taking affirmative steps to help him exhaust administrative remedies.  MDOC officials treated the January 26, 2024 letter as an IRR, and referred it to the MDOC's central office for a response.  MDOC officials sent Plaintiff's counsel a response on February 20, 2024, and also provided counsel with a copy of the MDOC's offender grievance policy, the MDOC's grievance appeal form, and instructions for exhausting the grievance procedure.  Defendants aver that as of the date they filed the instant Motion, Plaintiff has not submitted a grievance appeal concerning the issues raised in the Complaint.

In response to the instant motion, Plaintiff states he "submitted concerns and questions" to MDOC officials "by letter dated January 26, 2024," and "[a]fter waiting for answers for two weeks," Plaintiff's counsel "reasonably concluded answers would not be forthcoming, and in order to take timely, proactive steps to safeguard his constitutional rights before an April 9, 2024 execution, Mr. Dorsey's attorneys filed suit on February 9, 2024."  (ECF No. 16 at 1).  He

4

writes:

> On February 20, 2024, Richard Adams, the warden of the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, where Brian Dorsey is scheduled to be executed on April 9, 2024, responded to Mr. Dorsey's January 26 letter. See Exhibit 1. That letter included some substantive information and legal contentions, but stated unequivocally that:
>
> 1. MDOC considers Mr. Dorsey to have correctly submitted, through his January 26 letter, an "informal resolution request" under the MDOC's administrative process, referred to hereafter as the Offender Grievance Policy ("OGP").
>
> 2. MDOC excuses the requirement that Mr. Dorsey submit the IRR on the correct forms, and states that it will treat the IRR as if it were correctly submitted unless otherwise noted. There are no subsequence instances that are noted. While MDOC makes requests for additional information for future requests, at no point does MDOC state that Mr. Dorsey has not grieved properly under the administrative procedures.
>
> 3. MDOC explains that as Mr. Dorsey has fulfilled the initial grievance requirements and the agency has responded, if he is unsatisfied with the responses Mr. Dorsey may now move to file an official appeal and provides forms and guidance to do so. The warden's letter, filed on February 20, 2024, notes that Mr. Dorsey has 7 days in which to file his appeal, or his requests for "accommodations" will be abandoned. As such, Mr. Dorsey has until February 27, 2024 to file his appeal.
>
> Counsel for MDOC then filed a motion to dismiss a few hours later on February 20, 2024, for failure to exhaust the administrative remedies.

*Id.* at 2. Plaintiff characterizes the foregoing statements as telling him that he had "properly filed a grievance nearly four weeks ago," and complains that Defendants are now improperly seeking dismissal based upon his failure to exhaust administrative remedies. *Id.* at 2-3. Also, as addressed fully below, Plaintiff argues that administrative remedies were unavailable, and he was therefore not required to exhaust them before filing this action on February 9, 2024. In reply, Defendants argue that Plaintiff has not established that administrative remedies were unavailable, and outright dismissal is therefore mandatory.

**Discussion**

5

Defendants filed the instant motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Citing 42 U.S.C. § 1997e(a), Defendants claim they are entitled to dismissal because Plaintiff failed to exhaust administrative remedies before filing the Complaint.  Exhaustion of administrative remedies is an affirmative defense, not a pleading requirement.  *Jones v. Bock,* 549 U.S. 199 (2007).  However, a complaint may be subject to dismissal under Rule 12(b)(6) when the affirmative defense is apparent from the face of the Complaint.  *Id.* at 215.

Section 1997e(a) provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted."  To exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the institution's applicable procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 93-103 (2006); *Jones,* 549 U.S. at 922 (2007) (same).  Such exhaustion is mandatory even in the execution context.  *Ramirez v. Collier*, 595 U.S. 411, 421, (2022).

Prisoners are only required to exhaust administrative remedies that are "available," which means "capable of use to obtain some relief for the action complained of."  *Smith v. Andrews,* 75 F.4th 805, 809 (8th Cir. 2023) (quoting *Ross v. Blake,* 578 U.S. 632, 642 (2016)).  As long as "the administrative process has authority to take some action in response to a complaint, [even if] not the remedial action an inmate demands," administrative remedies are "available."  *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)).  Courts must apply this standard to the "real-world workings of prison grievance systems."  *Ross,* 578 U.S. at 643.

A prisoner must exhaust available administrative remedies before filing suit in federal

6

court. *Johnson v. Jones*, 340 F.3d 624, 627–28 (8th Cir. 2003). A prisoner's failure to do so cannot be cured by a continuance or other action to permit exhaustion to occur. *Id.* at 628. Instead, "outright dismissal" is required. *Id.* at 628.

In this case, Plaintiff admits he is an inmate in the custody of the MDOC, and his Complaint asserts claims of Constitutional and statutory violations related to the MDOC's execution protocol. His claims therefore fall within § 1997e(a)'s exhaustion requirement, and exhaustion is mandatory. *See* 42 U.S.C. § 1997e(a); *Ramirez*, 595 U.S. at 421.

In his Complaint, Plaintiff states he sent a letter dated January 26, 2024 and addressed to the MDOC's general counsel, and filed this action before receiving a response to his claims. That does not amount to presenting his claims in accordance with the MDOC's grievance procedure. It therefore appears from the face of the Complaint that Plaintiff failed to exhaust administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 93-103 (to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the institution's applicable procedural rules); *see also Jones,* 549 U.S. at 922. However, Plaintiff was only required to exhaust administrative remedies that were "available." 42 U.S.C. § 1997e(a); *Smith,* 75 F.4th at 809. The Court therefore considers whether administrative remedies were available, meaning "capable of use to obtain some relief for the action complained of." *Smith,* 75 F.4th at 809.

Plaintiff asserts that administrative remedies were unavailable because the grievance process was delayed for reasons beyond his control. Plaintiff argues that the Director of Adult Institutions is an important party involved in the grievance process, but "had to go on medical leave, already affecting the timeliness of the response . . .". (ECF No. 16 at 3). He argues he "engaged in the grievance process by submitting an informal remedy request," and filed this

7

action after what he decided was a "reasonable time" to wait for a response. *Id.*  He contends that administrative remedies were not capable of use because the administrative process does not facilitate addressing his execution-related claims within the relevant time frame.  He states he "filed suit after a reasonable time for a response; to have waited longer would have endangered his right to have this Court consider his claims at all." *Id.* at 4.  He argues that "[g]iven the limited time remaining, the importance of the fundamental rights at stake, and the inability for any court to craft a remedy if those rights are violated, the administrative process is functionally unavailable." *Id.* at 5.

Those arguments do not establish that the MDOC's grievance procedure was unavailable. Plaintiff does not establish, nor is it apparent, that the absence of one official would divest the MDOC's administrative process of the authority to "take some action in response to a complaint." *Muhammad*, 933 F.3d at 1000.  As long as "the administrative process has authority to take some action in response to a complaint, [even if] not the remedial action an inmate demands," administrative remedies are "available." *Id.*

Additionally, Plaintiff's arguments are based on his subjective beliefs that he had waited long enough for a response to the claims in the January 26, 2024 letter, and that his claims cannot be resolved within the time frame of his scheduled execution.  "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).  Additionally, as Defendants note, the MDOC's grievance procedure provides an expedited process for prisoners with claims concerning the MDOC's execution protocol.  To the extent Plaintiff claims he should be excused from exhausting administrative remedies because he faces execution, such claim is meritless. *See Ramirez*, 595 U.S. at 421 (exhaustion is mandatory even in the execution

context).

In addition, the Court notes that the Missouri Supreme Court's Warrant of Execution that Plaintiff attached to his Complaint is dated December 13, 2023.  It therefore appears Plaintiff waited over 40 days before sending the January 26, 2024 letter to MDOC officials to raise claims concerning the MDOC's execution protocol.  Also, as Defendants note, Plaintiff's letter did not request expedited review.  While not dispositive, the foregoing belies Plaintiff's assertion that MDOC officials caused unreasonable delay by not responding to his claims within two weeks.

Plaintiff also contends that administrative remedies were unavailable because MDOC officials told Plaintiffs' counsel to not contact the MDOC, which barred Plaintiff from contacting his grievance officer and/or filing a grievance.  However, the statement to Plaintiff's counsel simply cannot be interpreted as barring, or intending to bar, Plaintiff from contacting his grievance officer, or filing any grievance document. Plaintiff also states that the rules surrounding the grievance procedure were "unknowable," such that an ordinary prisoner could not make sense of how to comply with them.  *Id.* at 5.  However, Plaintiff has not shown he did not know how to use the MDOC's grievance procedure, or that an ordinary prisoner would be unable to navigate it.  In fact, as Defendants note, other prisoners have used the MDOC's grievance procedure to challenge the MDOC's execution protocol.  *See Ringo v. Lombardi,* 706 F. Supp. 2d 952 (W.D. Mo. Mar. 2, 2010).

Plaintiff also argues that MDOC officials' insistence on maintaining confidentiality of communication during the grievance process would require him to seek permission to include such confidential material in a court filing, and erects a "unacceptable additional hurdle to judicial review." (ECF No. 16 at 8).  However, there is no requirement that prisoners plead exhaustion of administrative remedies in a complaint, and rules exist for filing confidential

material in federal court.  Plaintiff's argument that an insistence on confidentiality erected an "unacceptable additional hurdle" is meritless.  *Id.*

Plaintiff also claims administrative remedies were unavailable because the administrative process is "unavailing to resolve constitutional issues around a lethal injection protocol that is extraordinarily vague and fails to give Mr. Dorsey the information he would need to assert a grievance," placing him in danger of running afoul of the MDOC's prohibition of "unfounded" complaints.  (ECF No. 16 at 5).  He also claims that administrative remedies were unavailable because they were futile.  In support, Plaintiff argues that "[b]ecause MDOC fails to recognize the constitutional rights being asserted and the viable alternatives as required to bring the MDOC's execution protocol in line with the Constitution, there is no meaningful administrative path forward for Mr. Dorsey to resolve his constitutional concerns."  *Id.* at 7.  Plaintiff includes discussion about the merits of his claims.

Plaintiff's arguments are unavailing.  First, the fact that Plaintiff's claims involve execution does not render the MDOC's grievance procedure unavailable, or otherwise excuse Plaintiff from exhausting administrative remedies.  *See  Ramirez*, 595 U.S. at 421.  Also, as Defendants contend, Plaintiff essentially admits that the MDOC's administrative process has the authority to take some action in response to his complaint.  Plaintiff submitted the January 26, 2024 letter in an attempt to present at least some of his claims.  He only filed this action after the MDOC did not address his claims within a time he subjectively believed was reasonable.  And as noted above, other prisoners have used the MDOC's grievance procedure to challenge the MDOC's execution protocol.  *See Ringo,* 706 F. Supp. 2d 952.

Plaintiff's arguments evidence his belief that the MDOC will not give him the remedial action he wants when he wants it, not that the administrative process lacks the authority to take

10

some action in response to his complaint. As long as "the administrative process has authority to take some action in response to a complaint, [even if] not the remedial action an inmate demands," administrative remedies are "available." *Muhammad*, 933 F.3d at 1000.

Plaintiff also complains that Defendants now move for dismissal based on his failure to exhaust administrative remedies, even though MDOC officials told him he "properly filed a grievance nearly four weeks ago." (ECF No. 16 at 2). To the extent Plaintiff argues that MDOC officials somehow discouraged or prevented him from using the MDOC grievance procedure, his argument is not well taken. Plaintiff does not aver that MDOC officials told him he had exhausted administrative remedies, only that he had "properly filed a grievance." *Id.* Additionally, Plaintiff admits that MDOC officials told him he had "fulfilled the initial grievance requirements" and was free to appeal, and provided forms and guidance to do so. *Id.* Those statements cannot be interpreted as a statement that Plaintiff had fully exhausted administrative remedies as required by 42 U.S.C. § 1997e(a).

The Court concludes that administrative remedies were available to Plaintiff. If administrative remedies are available, a prisoner must exhaust them. 42 U.S.C. § 1997e(a); *Chelette,* 229 F.3d at 688. It is apparent from the face of Plaintiff's Complaint that he did not present any of the claims in the Complaint in accordance with the institution's applicable procedural rules, and therefore failed to exhaust available administrative remedies before filing this action. *See Woodford*, 548 U.S. at 93-103; *Jones,* 549 U.S. at 922. Such failure cannot be cured by a continuance or other action to permit exhaustion to occur. *Johnson*, 340 F.3d at 628. Instead, "outright dismissal" is required. *Id.*

For the foregoing reasons, the Court grants the instant Motion, and dismisses this action at this time, without prejudice, due to Plaintiff's failure to exhaust available administrative

11

remedies. *See* 42 U.S.C. § 1997e(a).  Because this action is being dismissed, the Court denies as moot "Plaintiff Brian Dorsey's Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 2), and Defendants' later-filed "Motion to Dismiss and Suggestions in Support" (ECF No. 18).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Dismiss for Failure to Exhaust Administrative Remedies" (ECF No. 12) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice.  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that "Plaintiff Brian Dorsey's Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 2) and Defendants' "Motion to Dismiss and Suggestions in Support" (ECF No. 18) are **DENIED** as moot.

Dated this  4th day of  March, 2024.

                                        HENRY EDWARD AUTREY
                                      UNITED STATES DISTRICT JUDGE